UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                              Case No. 07-60543

THE ESTATE OF THE ASSIGNMENT FOR                                    Chapter 11
THE BENEFIT OF CREDITORS OF
EDWARD PAUL MAY,                                                    Judge Thomas J. Tucker

                            Debtor.
_____/

## OPINION REGARDING MOTION TO DISMISS CHAPTER 11 CASE

### I. Introduction

This voluntary Chapter 11 case was filed by a liquidating trust. That trust was created

under state law, by an assignment for the benefit of creditors. The assignment was executed by

an individual who allegedly engaged in a fraudulent Ponzi scheme,[1] involving perhaps as much

as $200-$300 million and scores of victims. Soon after the assignment was made, the *assignee*

filed this voluntary Chapter 11 case on behalf of the trust, with the stated purpose of pursuing a

plan of liquidation.

One of the creditors has moved to dismiss the case. The issue presented is whether the

liquidating trust in this case is eligible to be a bankruptcy debtor under 11 U.S.C. § 109, which

_____

[1] *Black's Law Dictionary* 1180 (7th ed. 1999) defines a "Ponzi scheme" as:

> A fraudulent investment scheme in which money contributed by later
> investors generates artificially high dividends for the original investors,
> whose example attracts even larger investments. • Money from the new
> investors is used directly to repay or pay interest to old investors, usu.
> without any operation or revenue-producing activity other than the
> continual raising of new funds. This scheme takes its name from
> Charles Ponzi, who in the late 1920s was convicted for fraudulent
> schemes he conducted in Boston. Cf. PYRAMID SCHEME.

depends on whether the trust is a "business trust." The issue, at least as to a liquidating trust created by an assignment for the benefit of creditors, appears to be one of first impression.

The Court concludes that this liquidating trust is not a "business trust," and therefore is not eligible to be a bankruptcy debtor. As a result, the Court must dismiss this case.

## II. Procedural history and factual background

### A. Pre-bankruptcy events

Before this Chapter 11 case was filed, Edward Paul May was an investment advisor and the managing or controlling member of some 266 corporations. Allegedly, the corporations were not legitimate businesses, but rather were used to facilitate a fraudulent Ponzi scheme. Allegedly, over a period of several years, May solicited and received funds from many parties for purported investments totaling between $200 and $300 million. Contrary to representations made by May, funds received from investors were placed into high risk, rather than low risk, investments. In many cases, funds may not have been invested at all, but rather were used to pay false dividends to earlier investors, or diverted for the personal use of May. Apparently, May is currently under investigation by the Securities and Exchange Commission, the Federal Bureau of Investigation, and possibly other federal or state authorities.[2]

On September 19, 2007, May executed an Assignment for the Benefit of Creditors ("Assignment"), to David M. Findling, as the Assignee.[3] As required by Michigan law, Findling filed the Assignment with the Oakland County, Michigan Circuit Court (Case No. 07-086168-

---

[2] (*See* Docket # 7, ¶¶ 7, 8.)

[3] (Docket # 327, Exhibit 1.)

2

CZ).  Under the Assignment, May transferred to Findling all of his property, for distribution for

the benefit of May's creditors.  As the Assignee, Findling holds the property assigned in trust.[4]

---

[4]  Under the Assignment, the Assignee was authorized to do the following:

(1) To take charge and possession of the property and to reduce the property to money as soon as it can be done wisely, prudently, and properly, using the Assignee's best judgment in selling and disposing of the property on such terms as the Assignee may see fit at a public or private sale, or to continue the business, whichever in the judgment of the Assignee is best calculated to net the best returns for the creditors.

(2) To administer the trust created by this assignment to the best of the Assignee's ability. However, the Assignee is liable only for reasonable care and diligence in the administering of the trust.  Furthermore, the Assignee may act through or by agents and will not be responsible for any negligence of the agents selected with reasonable care, nor will the Assignee be liable or responsible for anything done by the Assignee in good faith in the execution of this trust.  Any contract or agreement made by the Assignee in connection with the trust will not be binding on the Assignee in the Assignee's personal capacity, but will bind the assigned estate and the Assignee in the Assignee's representative capacity.

(3) To compromise claims, to discount bills, and to complete or refuse to complete and cancel conditional sales contracts and other contracts now in force to which the Assignor is a party.

(4) To pay the creditors of the Assignor, pro rata, according to the indebtedness due to them from the Assignor, the net proceeds arising from the conduct of the business and the sale and disposal of the property, or any portion of the property, after deducting all amounts that the Assignee must at the Assignee's option pay to discharge any lien on any of the property and any indebtedness that, under the law, is entitled to priority of payment and, after paying all charges and expenses, including the Assignee's own remuneration and that of any agents or attorneys who may be employed by the Assignee, the amounts of which will be in the discretion of the Assignee.

(5) To borrow money or to hypothecate, mortgage, or pledge on such terms as the Assignee may see fit all assets of the Assignor in the Assignee's possession.  The Assignee generally has power and authority to perform all acts that the Assignor could have done prior to the execution of this assignment.

(6) To apply for any deposits, refunds, or claims, whenever necessary, in the name of the Assignee.  This instrument constitutes a Power of Attorney from the Assignor to the Assignee to accomplish this application.

(7) To have all mail matter addressed to the Assignor delivered to the Assignee on the Assignee's order; the Assignee may execute a written order to that effect.

(8) To pay the balance or surplus of this Agreement, if any, to the Assignor.

(continued...)

3

On October 8, 2007, May executed an Addendum to the Assignment ("Addendum"). The stated purpose of the Addendum was "to more precisely delineate the assets assigned and transferred to Assignee and to precisely delineate the powers and authority of the Assignee."[5]

---

[4](...continued)
(Docket # 327, Exhibit 1.)

[5] Under the Addendum, the Assignee was given broad powers, namely to:

1.  Preserve, hold and manage all assets, and perform all acts necessary to preserve the value of those assets, to prevent any loss, damage or injury;

2.  Remove any officer, independent contractor, employee, or agent of Edward Paul May, from control and management of the affairs of Edward Paul May;

3.  Prevent the withdrawal or misapplication of funds;

4.  Manage and administer all aspects of Edward Paul May by performing all acts incidental thereto that the Assignee deems appropriate, including hiring or dismissing any and all personnel or suspending operations of any business;

5.  Sue for, collect, receive, and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, documents, books, records, work papers, and records of amounts, including computer-maintained information, and other papers of Edward Paul May, including documents related to customers, clients or limited partners of Edward Paul May whose interests are now held by or under the direction, possession, custody or control of Edward Paul May;

6.  Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of Edward Paul May or to carry out his or her duties pursuant to this Assignment, including the power to commence proceedings under Title 11 of the United States Code on behalf of the Assignor;

7.  Choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Assignee deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Assignment;

8.  Issue subpoenas to obtain documents and records pertaining to the

(continued...)

Also on October 8, 2007, May executed a Resolution ("Resolution") authorizing the Assignee to conduct the affairs of the 266 corporations managed by May, and to file legal proceedings in the name of the entities.[6]

## B.  The bankruptcy filing

Three days later, on October 11, 2007, Findling, as Assignee, filed the present Chapter 11 bankruptcy case.  He filed a voluntary bankruptcy petition in the name of  the "Estate of the Assignment for the Benefit of Creditors of Edward Paul May," care of "David Findling, Esq., Assignee for the Benefit of Creditors" (the "Debtor-in-Possession").  Thus, the bankruptcy case

---

[5](...continued)
        Assignment, and conduct discovery in this action on behalf of the Estate;

9.      Open one or more bank accounts as designated depositories for funds of
        Edward Paul May.  The Assignee may deposit all funds of Edward Paul
        May in such designated accounts and shall make all payments and
        disbursements from the Estate from such accounts;

10.     Initiate, defend, compromise, adjust, intervene in, dispose of, or become
        a party to any actions or proceedings in state, federal or foreign court
        necessary to preserve or increase the assets of all Limited Liability
        Companies, Corporations and other entities that Edward Paul May
        controlled, owned, or managed prior to execution of the Original
        Assignment and Addendum;

11.     Exert authority over, control and manage all Limited Liability
        Companies, Corporations or other entities that Edward Paul May
        controlled or managed as the Managing Member, Sole Member or Sole
        Stockholder, prior to execution of the Original Assignment and the
        Addendum.

12.     Make payments and disbursements from the Estate that are necessary or
        advisable for carrying out the directions of this Court, or exercising the
        authority granted by this Assignment.

(Docket # 327, Exhibit 2, Section D.)

[6]  (*Id.* at Exhibit 3.)

5

was filed solely by the trust that was created under Michigan law by May's assignment for the benefit of creditors. Neither Edward May, individually, nor any of his 266 corporations has filed bankruptcy. Nor has Findling, as Assignee, attempted to cause any of May's corporations to file bankruptcy. Nor have any creditors filed an involuntary bankruptcy petition against May or any of his corporations.

In a motion filed early in this case, the Assignee explained why he filed this Chapter 11 case:

> [T]he creditors of Edward Paul May were best protected if the process of collecting and liquidating assets, determining the validity of claims and distribution to creditors was conducted in the context of a Chapter 11 proceeding, as opposed to the Oakland County Circuit Court. The decision to file these proceedings was also motivated by discussions with federal enforcement authorities who indicated that they would be more comfortable with the Bankruptcy Court oversight and approval and disclosure requirements, of a proceeding under Title 11. . . . Furthermore, . . . the filing of the Chapter 11 presented a greater likelihood of the Assignee working with and benefitting from mutual cooperation with enforcement agencies, rather than risking a lack of cooperation and disruption with the process of collecting and distributing assets for the benefit of creditors.[7]

On October 19, 2007, the Court issued an order requiring the Debtor-in-Possession to appear and show cause why this Chapter 11 case should not be converted to Chapter 7.[8] The Court issued the show cause order because of written statements made by the Debtor-in-Possession, indicating that it had no business operations, and that it intended to pursue a plan of

---

[7] (Docket # 8, ¶ 6.)

[8] (Docket # 10.)

6

liquidation. An example is the following statement, made in one of the Debtor-in-Possession's early motions:

> The present case is far more in the nature of a Chapter 7 or Chapter 11 liquidation proceeding than a Chapter 11 reorganization. The Estate has no ongoing business operations, does not intend to reorganize, and will distribute assets in the priorities established by 11 U.S.C. § 726, rather than whatever other terms or classifications might be included in a Plan of Reorganization.[9]

The show cause hearing, held on October 31, 2007, was attended by Findling, as Assignee, and his counsel, and the United States Trustee, who all argued against conversion. The Court dissolved its show cause order without prejudice, and did not convert the case to Chapter 7.

### C. The motion to dismiss

On March 24, 2008, creditor GunnAllen Financial, Inc. ("GunnAllen") filed a motion to dismiss this bankruptcy case.[10] GunnAllen argued that the Debtor-in-Possession is not a "business trust" and thus is not a "person" eligible to be a debtor in bankruptcy under 11 U.S.C. § 109(a). *See also* 11 U.S.C. §§ 101(9)(A)(v), 101(41).

Two other creditors filed concurrences, joining GunnAllen's request for dismissal.[11] The Debtor-in-Possession and the Official Committee of Unsecured Creditors filed objections and

---

[9] (Docket # 7, ¶ 8.)

[10] (Docket # 270.)

[11] (Docket ## 274 (George K. Allan), and 326 (Questar Capital Corporation.))

7

briefs opposing GunnAllen's motion to dismiss.[12]  Twenty other objections to the motion were filed by creditors.[13]

The Debtor-in-Possession and the Committee do not dispute that the purpose of the assignment trust and of this bankruptcy case is the liquidation of Edward May's assets for the benefit of May's creditors.  But they argue that the trust created by the Assignment is nonetheless a "business trust," and thus is eligible to be a debtor under the Bankruptcy Code.  They argue among other things that the Debtor-in-Possession's ongoing and planned liquidation activity itself constitutes the conduct of business.

The Court held a hearing on GunnAllen's motion on May 14, 2008, and took the matter under advisement.

## III.  Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), and the United States District Court's Local Rule 83.50(a)(E.D.M.).  This is a core proceeding because it is a proceeding "arising under title 11," or a proceeding "arising in a case under title 11," within the meaning of 28 U.S.C. §§ 157(a) and 157(b)(1), as the Sixth Circuit interprets those statutes.  *See Bliss Technologies, Inc. v. HMI Industries, Inc.* (*In re Bliss Technologies, Inc.*), 307 B.R. 598, 602-03 (Bankr. E.D. Mich. 2004).

---

[12]  (Docket ## 320, 327.)

[13]  (*See* Docket ## 290, 314 (Garrith and Marlene Knaus); 294 (Victor E. Kubani); 295, 359 (Jeffrey M. Augustyn); 300 (Lynn G. Talbert); 301, 333 (Donna Emmendorfer); 303 (John H. Ostrander); 304 (Roberto Vellanoweth); 315 (Patrick and Kathryn Obryan); 316, 358 (Samuel Kirk); 319 (Kenneth J. Law); 324 (William J. St.Louis); 325 (Donald E. Haase); 347 (Gregory Haase); 348 (Keith S. Szymkiw); 349 (Marilyn S. Schrieber); 350 (Michael C. Schreiber); 354 (Linda S. Fletcher); 355 (Gary R. Johns and Lily J. Moniuszko-Johns); 356 (Albert A. Acker); 360 (Carol L. Wayne and Micheal R. Wayne).

8

In this case, GunAllen contends that eligibility to be a debtor under 11 U.S.C. § 109 is a jurisdictional requirement. The Debtor-in-Possession and other parties dispute that. But even if eligibility is a jurisdictional requirement, the Court still has subject matter jurisdiction to determine the § 109 eligibility issue, because the Court always has subject matter jurisdiction to determine whether jurisdiction exists. *E.g.*, *United States v. Haskins*, 479 F.3d 955, 957 (8th Cir. 2007)("A court has jurisdiction to determine its own jurisdiction.")(citing *United States v. United Mine Workers of America,* 330 U.S. 258, 291 (1947)); *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 808 (7th Cir. 2005). No party contends otherwise.

## IV. Discussion

### A. The trust must be "business trust" to file bankruptcy

Under Michigan law, an assignment for the benefit of creditors is regulated by statute. *See* Mich. Comp. Laws. Ann. § 600.5201 *et seq*. Among other things, such an assignment must assign "all property of the assignor not exempt from execution;" and must not make "preferences as between . . . creditors." Mich. Comp. Laws. Ann. § 600.5201(1).

The parties in this case agree that the Assignment created a trust, and that it was a voluntary conveyance by May to Findling of title to all of May's property, to be held in trust for the sole purpose of liquidating May's assets for the benefit of his creditors. This liquidation involves converting property to money, and distributing the money to May's creditors. In short, the parties agree that the debtor in this Chapter 11 case is a liquidating trust.

The issue is whether this liquidating trust is eligible to be a debtor in bankruptcy under 11 U.S.C. § 109. Section 109 specifies who is eligible to be a debtor under each chapter of the Bankruptcy Code. The parties agree that under § 109 the trust in this case must be a "person" to

9

be a debtor.  *See* 11 U.S.C. § 109(a), (b), and (d).  As defined in 11 U.S.C. § 101(41), the term

"person" includes an individual, a partnership, and a corporation.  While generally a trust is not

eligible to be a debtor, one exception is that the definition of a "corporation" includes a "business

trust."  Section 101(9)(A)(v) defines "corporation:"

> (9) The term "corporation" –
>
> > (A) includes –
> >
> > > (i) association having the power or privilege that a private corporation, but not an individual or partnership, possesses;
> > >
> > > (ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;
> > >
> > > (iii) joint-stock company;
> > >
> > > (iv) unincorporated company or association; or
> > >
> > > (v) **business trust**; but
> >
> > (B) does not include limited partnership.

11 U.S.C. § 101(9)(A)(emphasis added).

 The parties agree that in order to be eligible to be a bankruptcy debtor, the trust created

by the Assignment at issue must qualify as a "business trust."

### B.  The *Knight Trust* test

The Bankruptcy Code does not define the term "business trust."  Courts have taken

varying approaches in determining whether a trust is a "business trust."  This Court is bound to

apply the principles announced by the Sixth Circuit, in *Brady-Morris v. Schilling* (*In re Kenneth

Allen Knight Trust*), 303 F.3d 671 (6th Cir. 2002).  In that case, the Sixth Circuit held that federal

10

law, rather than state law, determines whether a trust is a business trust for purposes of

bankruptcy eligibility. The court applied a "primary purpose test" to determine whether a trust is

a business trust. *Id.* at 677. That test:

> consists in two propositions: first, "trusts **created with the
> primary purpose of transacting business or carrying on
> commercial activity for the benefit of investors qualify as
> business trusts**, while trusts designed merely to preserve the trust
> res for beneficiaries generally are not business trusts"; and second,
> "the determination is fact-specific, and it is imperative that
> bankruptcy courts make thorough and specific findings of fact to
> support their conclusions" — **findings, that is, regarding what
> was the intention of the parties, and how the trust operated**.

*Id.* at 680 (emphasis added)(citing *Brady v. Schilling* (*In re Kenneth Allen Knight Trust*), 121

F.3d 708 (6th Cir. 1997)(unpublished)).

In adopting this test, the Sixth Circuit rejected two requirements imposed by some cases

— namely, that to be a business trust, the trust must have transferable certificates of ownership;

and the trust's business or commercial activity must be "for profit." *Knight Trust*, 303 F.3d at

676-77.

Although the *Knight Trust* case sets forth the test to be applied by courts in this circuit,

the facts of *Knight Trust* were quite different from this case. The trust at issue in *Knight Trust*

was not a liquidating trust. Thus, the case provides only limited guidance as to whether a trust

designed to liquidate assets for the benefit of creditors may be considered to be "transacting

business or carrying on commercial activity." Moreover, unlike the trust created by the

Assignment in this case, which does not contemplate any ongoing business operations in the

ordinary sense of that term, the trust in *Knight Trust* was found to be actually transacting such

business.

The trust in *Knight Trust* was formed by James Brady, who was the trustee and had total control over the trust, including managing the assets. The beneficiaries included Brady himself and his daughters. The trust owned two main assets: Brady's personal residence, and a 100% interest in a corporation which owned four subsidiary corporations. The subsidiaries, in turn, owned and operated restaurants and "various real estate investments." *See* 303 F.3d at 674. The bankruptcy court found that "most if not all of the Subsidiaries' financial activities were conducted through the Trust and its bank accounts" and "Brady treated the trust just as he treated his other business entities." *Id.* at 674-75. As a result,

> [t]he bankruptcy court concluded that "it is clear that James Brady created this trust solely for his benefit and was in actuality the settlor/grantor of the KAK trust," and that "it is beyond dispute that the KAK Trust was intended to operate as a 'holding company' for James Brady's various business enterprises"; thus the bankruptcy court found that "the sole purpose of the KAK Trust, from its inception, was to be an entity through which James Brady could conduct his business affairs."

*Id.* at 675.

Based on these facts, the Sixth Circuit held that the bankruptcy court was "correct in finding that the primary purpose of the Trust was to transact business or carry on commercial activity for the benefit of James Brady, the investor, and not merely to preserve the Trust's res for the beneficiaries." *Id.*

While *Knight Trust* does not directly address whether a liquidating trust may be considered a business trust, a few bankruptcy court cases from other jurisdictions have done so. Some liquidating trust cases have held that the liquidating trust involved was a business trust. *See In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531 (Bankr. W.D. Tenn. 1986); *In*

12

*re Captran Creditors Trust*, 53 B.R. 741 (Bankr. M.D. Fla. 1985); *In re Tru Block Concrete Products Inc.,* 27 B.R. 486 (Bankr. S.D. Cal. 1983)*.*

Other cases have held that the liquidating trust involved was not a business trust. *See In re Hemex Liquidation Trust*, 129 B.R. 91 (Bankr. W.D. La. 1991); *In re Gurney's Inn Corp. Liquidating Trust*, 215 B.R. 659 (Bankr. E.D.N.Y. 1997).[14]

None of these liquidating trust cases involved an assignment for the benefit of creditors.[15] The parties have cited no such case, and the Court has found none. There appears to be no reported case in which a state-law assignee for the benefit of creditors filed a voluntary bankruptcy case.

### C. Application of the *Knight Trust* test, and the *DeLorean* case

Applying the Sixth Circuit test, this Court finds that the primary purpose of the liquidating trust in this case is *not* "transacting business or commercial activity for the benefit of

---

[14] Bankruptcy courts interpreting other types of trusts are similarly divided on the meaning of the term "business trust." *See Shawmut Bank Connecticut v. First Fidelity Bank (In re Secured Equip. Trust of Eastern Airlines, Inc.)*, 38 F.3d 86 (2d Cir. 1994)(the court held that where trust was not established to transact business in the ordinary sense of the phrase, and any business the trust conducted was "incidental to the Trust's sole responsibility of protecting the certificateholders' security interest," the trust was not a business trust)*; In re Morgantown Trust No. 1*, 155 B.R. 137 (Bankr. N.D.W.Va. 1993)(the court considered a number of factors and found that the failure to comply with state law regarding the structuring of the trust, was a significant factor)*; In re Margaret E. DeHoff Trust I*, 114 B.R. 189 (Bankr. W.D. Mo. 1990)(the court looked at distinguishing characteristics of business trusts, and held that debtor was not eligible where trust was not established to carry on commercial activity for profit for investors, but rather for estate planning purposes); *In re Medallion Realty Trust*, 103 B.R. 8 (the court looked at whether the trust's beneficiaries make a contribution in money to the enterprise, without regard to whether the trust had characteristics of a corporation such as separate certificates of ownership); *In re Village Green Realty Trust*, 113 B.R. 105 (Bankr. D. Mass. 1990)(the court looked first to state law for guidance on the definition of business trusts, then to the trust's substance); *In re Treasure Island Land Trust*, 2 B.R. 332 (Bankr. M.D. Fla. 1980)(the court's test included carrying on some kind of business or commercial activity "for profit").

[15] The Court also notes that each of the trusts discussed in the liquidating trust cases cited above was a successor-in-interest to a corporation, whereas in this case, the trust is a successor-in-interest to an individual, Edward May.

13

investors," as required by *Knight Trust*.  This conclusion flows from the Sixth Circuit case of

*Allard v. Weitzman* (*In re DeLorean*), 991 F.2d 1236 (6th Cir. 1993), cited by GunnAllen.  In

*DeLorean*, the court considered whether the activities of a Chapter 7 trustee, which are very

similar to those of the Assignee in this case, constituted "carrying on business" within the

meaning of 28 U.S.C. § 959(a).  *Id.*  That statute provides an exception to the so-called *Barton*

doctrine.[16]  It states:

> Trustees, receivers or managers of any property, including debtors
> in possession, may be sued, without leave of the court appointing
> them, with respect to any of their acts or transactions in **carrying
> on business** connected with such property. Such actions shall be
> subject to the general equity power of such court so far as the same
> may be necessary to the ends of justice, but this shall not deprive a
> litigant of his right to trial by jury.

28 U.S.C. § 959(a)(emphasis added).

In *DeLorean*, the Sixth Circuit held that a Chapter 7 trustee is *not* "carrying on business,"

when the trustee is "merely collecting, taking steps to preserve, and/or holding assets, as well as

[engaging in] other aspects of administering and liquidating the [bankruptcy] estate," including

the filing of actions to avoid fraudulent transfers.  *See* 991 F.2d at 1241 (citing *U. and I. Inc. v.*

*Fitzgerald (In re Campbell)*, 13 B.R. 974, 976 (Bankr. D. Idaho 1981)).

Although the Sixth Circuit in *DeLorean* was interpreting the statutory phrase "carrying on

business" and not the precise phrases used by the *Knight Trust* case — "transacting business" and

---

[16]  In *Barton v. Barbour*, 104 U.S. 126 (1881), the United States Supreme Court held that a suit
could not be maintained against a receiver for an act done in the receiver's official capacity, without leave
of the court that appointed him.  In *Vass v. Conron Bros. Co.*, 59 F.2d 969 (2d. Cir. 1932), the court
applied this rule to a trustee in bankruptcy.  The exception to the *Barton* doctrine contained in 28 U.S.C.
§ 959(a) allows  a suit against a trustee for actions taken while "carrying on business" connected with
property of the bankruptcy estate.

14

"carrying on commercial activity" — this is not a material distinction. The phrases are synonymous. Nor is it a meaningful distinction that the *DeLorean* court was interpreting the phrase "carrying on business" in the context of a statutory exception to the *Barton* doctrine.

Under Michigan law, and under the assignment documents in this case, the assignee for the benefit of creditors is charged with basically the same duties that a Chapter 7 trustee has. Both act as trustees, and both act with the purpose of gathering the assets of a debtor, converting those assets to money, and distributing the money to the debtor's creditors.[17] None of the parties dispute this. Moreover, like the Chapter 7 trustee in *DeLorean*, who did not operate the business of the debtor, the Assignee in this case never intended to, and never did, operate the business of the Assignor, Edward May.

The liquidating trust in this case fails the *Knight Trust* test for another reason. In addition to requiring that the trust's primary purpose be to "[transact] business" or "[carry] on commercial activity," *Knight Trust* also requires that the primary purpose of the trust carrying on such activities be "for the benefit of investors," in order for the trust to qualify as a business trust. The person who created the trust in *Knight Trust*, for example, was an investor, and the trust conducted business for his benefit. In this case, the Assignor who created the trust, Edward May, obviously did not do so as an investment. And while there are creditors of Edward May who invested money, they cannot be said to have invested money *in* Edward May personally. Rather, they were investors in one or more of May's corporations. Technically, *as to Edward May*, the individual whose assignment created the liquidating trust at issue here, the many investors are

---

[17] *Compare* 11 U.S.C. § 704 *with* the assignment documents quoted in Section II-A of this opinion and Mich. Comp. Laws. Ann. §§ 600.5201 and 600.5211.

15

*creditors*, not "investors."  In this sense, then, liquidating the assets of Edward May is not for the benefit of "investors" as required by the *Knight Trust* test, but rather for the benefit of *creditors* of Edward May.

As required by *Knight Trust*, in determining the "primary purpose" of the trust, this Court has examined the trust documents and the facts of this case to determine not only the intention of the parties to the Assignment, but also how the assignment trust actually has operated.  The Assignment provides that among the six uses and purposes of the Assignment, as well as powers of the Assignee, is included the power to "continue the business."[18]  The Addendum also more precisely delineates the powers of the Assignee.[19]  The powers of the Assignee in the Addendum include: the power to take possession of property, to continue the business, to borrow money or hypothecate, to initiate legal proceedings, remove an officer or employee, control and manage the limited liability companies, and make payments to creditors.  Also, the Assignee generally has the "power and authority to perform all the acts that the Assignor could have done prior to the execution of this assignment."

While the stated powers of the Assignee under the Assignment and the Addendum are broad, they are essentially boilerplate, and are consistent with the very broad powers that Michigan law gives to *all* assignees for the benefit of creditors.[20]  And all of the powers are

_____

[18]  (Docket # 327, Exhibit 1.)

[19]  (*Id.* at Exhibit 2.)

[20]  For example, Mich. Comp. Laws Ann. § 600.5211 states:

Among other things the assignee has the power to:

(1) Sue in his own name as such assignee and recover all the estate, debts and things in

(continued...)

16

incidental to the primary stated purpose of the trust — to liquidate May's assets and distribute the proceeds to May's creditors.[21]

Despite the broad stated powers of the Assignee, the Court has examined the actions of the Assignee, both before and after he filed this bankruptcy case, and it is undisputed that he has not engaged in any business transactions or activities. The only activities of the Assignee have been gathering and liquidating May's assets. It is undisputed that the Assignee has never operated the business of Edward May, the Assignor, which allegedly was the operation of a multi-million dollar, criminal Ponzi scheme. The Assignee admits that he does not have, and never did have, any intention to operate this "business."

---

[20](...continued)
action belonging to or due to such assignor in the manner and with like effect as he might or could have done if an assignment had not been made, but no suit seeking equitable relief shall be brought by the assignee involving less than $500.00 without the consent of the court.

(2) Take into his hands all the estate of such assignor whether delivered to him or afterwards discovered, and all books, vouchers and papers relating to the same;

(3) From time to time sell the assets at public auction or at private sale, as herein provided;

(4) Redeem all mortgages and conditional contracts or other incumbrances and pledges of personal property; or sell such property subject to such incumbrances, contracts or pledges;

(5) Settle all matters and accounts between such assignor and his debtors and creditors and examine, on oath to be administered by him, any person touching such matters and accounts;

(6) Compound with any person indebted to such assignor, under order of said court or judge;

(7) Prosecute or defend suits pending in favor of or against the assignor.

[21] (*See id.* at Exhibit 1, ¶¶ 1, 4, quoted in footnote 4 of this opinion).

17

For these reasons, the Court must conclude that the liquidating trust in this case is not a "business trust" under controlling Sixth Circuit case law, and therefore is not eligible to be a bankruptcy debtor.

### D. The federal tax law analogy

The conclusion that the liquidating trust in this case is not a "business trust" is further supported by the fact that when Congress included the phrase "business trust" in the 1978 Bankruptcy Code, that phrase had an established meaning under federal tax law that *excluded* liquidating trusts. As one bankruptcy court has explained:

> Under the Bankruptcy Act of 1898 ("Act") Section 1(8), the term corporation was defined in essentially the same terms as Section 101(8) of the [1978] Code, with one notable exception. The term used in the [1978] Code, "business trust" replaces the following language used in the Act, "... any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument."
> . . .
> [T]his Court finds guidance in determining whether a liquidating trust may be a debtor from the body of law which has developed under the Internal Revenue Code ("Revenue Code").
>
> The Revenue Code recognizes a distinction between corporations and trusts. 26 U.S.C. § 7701. This distinction manifests itself in the manner in which the enterprise is taxed. Included within the Revenue Code's definition of corporation, is the term "association." 26 U.S.C. § 7701(a)(3). Embodied within the term association, is business or Massachusetts trust. *See Morrissey v. Commissioner of Internal Revenue*, 296 U.S. 344, 356, 56 S.Ct. 289, 294, 80 L.Ed. 263 (1935); *United States v. Trust No. B.I.35, Bank of America Nat. Trust and Savings Ass'n*, 107 F.2d 22, 23 (9th Cir.1939); *Bank of America Nat. Trust and Savings Ass'n v. U.S.*, 552 F.2d 876, 877 (9th Cir.1977).
>
> The Supreme Court has delineated the salient features which, if present, will qualify a trust as a business trust for tax purposes. They are:

18

(1) business purpose;
(2) title to property held by trustees;
(3) centralized management;
(4) continuity of existence;
(5) transferability of interests; and
(6) limited liability.

*Morrissey v. Commissioner of Internal Revenue, supra*, 296 U.S. at 359, 56 S.Ct. at 296. *See also Rohman v. United States*, 275 F.2d 120, 123-24 (9th Cir.1960).

**An examination of the tax cases interpreting what a business trust is reveals that a liquidating and a business trust are mutually exclusive of one another.** *See Jackson v. United States,* 110 F.2d 574 (9th Cir. 1940). **A trust does not engage in business if its sole or principal objective is the liquidation of a trust or estate.** Treas.Reg. § 301.7701-4 (1982); *Porter v. Commissioner of Internal Revenue Code*, 130 F.2d 276, 280 (9th Cir.1942); *Commissioner of Internal Revenue v. City Nat. Bank and Trust,* 142 F.2d 771 (10th Cir.1944). **If it is determined that a trust is a liquidating trust, then such a trust is treated as a simple trust—not a business trust—for purposes of the Revenue Code.**

*In re Tru Block Concrete Products, Inc.*, 27 B.R. 486, 488-89 (Bankr. S.D. Cal. 1983) (emphasis added).

In the *Tru Block* case, the bankruptcy court held that a liquidating trust *can* be a business trust for the purposes of the Bankruptcy Code, even though it is not a business trust for purposes of the Internal Revenue Code. The court reached that conclusion, however, by applying *California law*, which the court interpreted to hold "that a tax payer is engaged in business even if its sole activity is liquidation." *See id*. at 490.

This approach of applying state law, taken by the bankruptcy court in the *Tru Block* case, is not permissible in the Sixth Circuit. As noted above, the Sixth Circuit in the *Knight Trust* case

19

held that "the definition of 'business trust' properly belongs to federal, rather than state, law." *Knight Trust*, 303 F. 3d. at 679.

It appears that when Congress adopted the phrase "business trust" in the definition of corporation in the 1978 Bankruptcy Code, it intended generally to incorporate the federal tax law principles defining that concept. One exception to this, recognized by the Sixth Circuit in *Knight Trust*, is the preceding Bankruptcy Act's requirement that beneficial interests or ownership in the trust be evidenced by a "certificate or other written instrument." Congress dropped that requirement in enacting the 1978 Bankruptcy Code.[22] With that recognized exception, Congress appears to have intended, by adopting the phrase "business trust" in the 1978 Bankruptcy Code, to incorporate federal tax law concepts, including the concept that a liquidating trust is not a business trust. As the Supreme Court has noted, Congress is presumed to know existing law, including judicial interpretations of federal statutes, when it enacts a new law. *Cf. Lorillard v Pons*, 434 U.S. 575, 580-81 (1978).[23]

---

[22] In this one respect, the Sixth Circuit in *Knight Trust* rejected reliance on the federal tax law definition of a business trust. The Sixth Circuit noted than under the Supreme Court's *Morrissey* case, quoted above in the *Tru Block* case, transferrable certificates of ownership were required in order for a trust to be treated as a business trust under the Internal Revenue Code. The Sixth Circuit held that in employing the term "business trust" in the Bankruptcy Code, Congress intended to dispense with this requirement. The court based this conclusion on the prior Bankruptcy Act's definition that a corporation included "any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument." *Knight Trust*, 303 F.3d at 679. The court noted that "[c]ourts construing this provision consistently required that the shares of the beneficiaries be transferable and that they be evidenced by a certificate or writing." *Id*. (citations omitted). Because this provision of the Bankruptcy Act was eliminated in the 1978 Bankruptcy Code, the Sixth Circuit concluded that, in this respect, Congress intended to liberalize the definition of business trusts for bankruptcy purposes. *See id*.

[23] In *Lorrillard v. Pons*, for example, the Supreme Court reasoned:

Congress is presumed to be aware of an administrative or judicial

(continued...)

## V.  Conclusion

For the reasons stated in this opinion, the Court concludes that the liquidating trust created by Edward May's assignment for the benefit of creditors is not a "business trust" as that term is used in the Bankruptcy Code, so that the trust is not eligible to be a debtor in bankruptcy. The Court therefore has no choice but to dismiss this case, which it will do by separate order.

This decision, of course, does not mean that the many creditors of Edward May are left with no recourse.  As an "individual," Edward May is clearly eligible to be a bankruptcy debtor, in either a voluntary or an involuntary bankruptcy.  Similarly, the many corporations that May allegedly controlled, as "corporations," also appear to be eligible to be bankruptcy debtors.  And outside of the bankruptcy context, nothing in this decision precludes David Findling, as Assignee, from pursuing any other remedies for the benefit of Edward May's creditors, in one or more appropriate state or federal courts.  Today's decision simply means that Mr. Findling may not pursue the present, apparently unprecedented, course he has chosen — filing and prosecuting a voluntary bankruptcy case on behalf of the trust created by Edward May's assignment for the benefit of creditors.

**For publication**
**Signed on May 27, 2008**                                      **/s/ Thomas J. Tucker**
                                                                **Thomas J. Tucker**
                                                                **United States Bankruptcy Judge**

---

[23](...continued)
> interpretation of a statute and to adopt that interpretation when it re-
> enacts a statute without change. . . . [s]o too, where . . . Congress adopts
> a new law incorporating sections of a prior law, Congress normally can
> be presumed to have had knowledge of the interpretation given to the
> incorporated law, at least insofar as it affects the new statute.

434 U.S. at 580-81 (citations omitted).

21